LittletoN, Judge,
delivered the opinion of the court:
Plaintiff brings suit to recover disability retired pay from December 5,1945, when he was released from active duty, not by reason of physical disability, on the ground that the Army Board for the Correction of Military Records acted arbitrarily on December 22, 1953, when it denied plaintiff’s application for correction without granting him a hearing.
Plaintiff and defendant have both moved for summary judgment. Defendant’s motion is based on two grounds: (1) that the pleadings and the record before the court fail to show any arbitrary or capricious action by the Secretary of the Army in denying plaintiff disability retirement with pay, and (2) that plaintiff’s claim is barred by the statute of limitations.
Plaintiff urges that the pleadings and documents attached thereto in support of the cross motions establish his claim, and that since the alleged arbitrary action of the Correction Board occurred in 1953, his petition filed in 1954 is timely.
The facts alleged in the pleadings and established by the documents supporting the cross motions may be summarized as follows. On June 4, 1941, plaintiff was called to active duty in the Army of the United States and was commissioned a second lieutenant late in 1942. In January 1944, while on combat duty in Italy (Anzio Beachhead offensive), plaintiff was wounded by rifle fire, injuring his right shoulder, and by shell fragments injuring his right elbow and left leg. Plaintiff was treated at the 56th Evacuation Plospital and then transferred to the 300th General Hospital. On Febru *154 ary 17, 1944, the elbow wound closed and on March 6, the wound of the left leg closed. On April 18, 1944, the Board of Medical Officers at the 800th General Hospital found that the wounds had healed but that plaintiff had weakness and limited motion in the left leg and right arm from the wounds received. The Board recommended that plaintiff be classified for limited service and assigned to non-combat duties. In November 1944 plaintiff was promoted to first lieutenant.
On September 18, 1945, plaintiff received a terminal physical examination at Separation Center No. 45, Indian-town Gap Military Reservation, Pennsylvania. On the report of that physical examination it was noted that plaintiff had scars, multiple, traumatic right shoulder, elbow and left shin, which were non-symptomatic and not disqualifying for limited service. Item 54, in which the question is asked whether the individual is permanently incapacitated for general service, no answer was given.
On September 19, 1945, plaintiff was appointed a first lieutenant in the Infantry, Officers Reserve Corps. On December 5,1945, pursuant to Special Orders No. 233, plaintiff was released from active duty, not by reason of physical disability.
Subsequent to his release from active duty, the Veterans’ Administration awarded plaintiff a combined 40% disability rating effective December 6,1945. After a reexamination in 1948, this rating was increased to 50%. Neither party has submitted documentary evidence in connection with plaintiff’s Veterans’ Administration record.
On November 17, 1947, pursuant to plaintiff’s request, he was returned to active duty and assigned to Madigan General Hospital, Tacoma, Washington, for appearance before an Army Retiring Board. On December 18, 1947, a Disposition Board at the hospital found that plaintiff’s wounds were well healed; that he had no degree of disability for military service of a general type; and that he was qualified for overseas service. The Disposition Board recommended that plaintiff, formerly classified as qualified for permanent limited service, now be qualified for general military service and be ordered to appear before an Army Retiring Board. The clinical abstract attached to the report of the Disposition *155 Board noted that plaintiff stated that he had experienced pain and stiffness of the right shoulder and elbow and limited motion in his left ankle, and that he experienced a sense of weakness just above the elbow joint after excessive manual work. Plaintiff also complained of a sense of weakness of the left lower leg after extensive walking. The report then stated:
Physical examination revealed a well healed scar approximately 2 cm. long over the anterior aspects of the shoulder and another well healed scar at the posterior axillary fold. Examination of the right arm and shoulder shows that the musculature is well developed. There is no significant tenderness, no restriction of motion and no loss of muscle power. There is a tendency toward voluntary restriction of abduction and flexion of the arm which can be overcome. There is no circulatory or neurologic changes of the right arm. Examination of the left leg reveals a jagged linear scar well healed lying slightly to the lateral side of the anterior tibia at the junction of the middle and lower third. Motion of the ankle joint is normal and all muscle power is good across the ankle joint. There is no significant point tenderness. The impression of the Chief of Orthopedic Service was no Orthopedic difficulty. X-rays of the left tibia, right shoulder and chest were normal. * * *
On January 20, 1948, plaintiff appeared before an Army Petiring Board. At the hearing before the Board, plaintiff testified that he believed his disability to consist of a weakness and partial limitation of movement of his right •arm and left leg due to wounds received in combat overseas. The two army doctors who had made the physical examination of plaintiff at Madigan General Hospital were called as medical witnesses. Both testified that plaintiff was not incapacitated for active service and that further treatment ■ of any kind was not necessary. Plaintiff cross-examined the first medical witness asking him whether he thought plaintiff could carry on as a first lieutenant in an infantry line company as of the time of the hearing and the witness replied ■in the affirmative. Plaintiff also cross-examined the second medical witness and asked whether the witness thought plaintiff could hike fifteen miles a day. The witness replied that fie knew of no reason why plaintiff could not walk fifteen *156 miles a day if be so desired. A Board member asked plaintiff why he felt he could not walk ten miles and plaintiff' testified that he had tried to do so at home and could not because his lower leg became lame and dragged. At the close of the hearing the Retiring Board found that plaintiff was not permanently incapacitated for active service and was physically qualified for general military service. On February 9,1948, the Surgeon General concurred in these findings and, on February 13, 1948, the findings were approved by the Secretary of the Army.
On March 23,1948, plaintiff, having been recalled to active-duty in order to appear before the Retiring Board, underwent a terminal physical examination in which he was found" not permanently incapacitated for general or limited service. It was noted on the report of the physical examination that plaintiff had been rated 40% disabled by the Veterans’ Administration for partial temporary disability. An attached medical history noted that the physical examination showed no gross asymmetry of the upper extremities, no muscle atrophy by measurement, no sensory changes and normal reflexes. The report noted that plaintiff appeared to be able to ■ abduct his right shoulder only to about 100 degrees but that the shoulder could be abducted fully on passive motion. The report stated that there was no limitation of joint or muscle power in the knee or ankle.
On March 23,1948, plaintiff was again released from active-duty, not by reason of physical disability.
In the summer of 1950, plaintiff received an order to active duty effective August 27, 1950. The order directed plaintiff to report on August 28,1950, to Headquarters, Pennsylvania Military District in Philadelphia, Pennsylvania, for the purpose of undergoing a final type physical examination after which plaintiff was to revert to inactive status pending receipt of orders for extended active duty. This took place at the time of the Korean War when plaintiff was 35 years of age. The medical report of this examination found plaintiff physically disqualified for general military service at that time. On January 12,1951, plaintiff was notified by the Assistant Adjutant General that he had been considered permanently physically disqualified for retention in the Active- *157 Reserve by reason of ankylosis, right shoulder, residual of shrapnel wound, left leg with atrophy and deformity, and that orders would be issued transferring plaintiff to the Honorary Reserve if he so desired. On January BO, 1951, plaintiff was notified that he was being honorably discharged from his commissions in the United States Army Reserve and in the Army of the United States (temporary) as of that date in view of the fact that he was considered to be permanently physically disqualified for general military service.
On January 12,1953, plaintiff filed an application for correction of his Army military record to show that he was separated from the service, on December 5, 1945, due to permanently incapacitating disabilities incurred in service and therefore entitled to disability retirement with pay. In support of his application, the Board was referred to the Veterans’ Administration records and plaintiff’s Army medical records.
On December 22, 1953, the Executive Secretary of the Army Board for Correction of Military Records advised the Adjutant General that a thorough review of plaintiff’s military, medical and Veterans’ Administration records, together with the information submitted by plaintiff, failed to reveal any evidence of injustice relative to his separation from active service on December 5, 1945, not by reason of physical disability and that there was no justification for a formal hearing and review of the case by the Board.
Plaintiff contends that the above facts, about which there is no dispute, show that the Correction Board acted arbitrarily in not giving plaintiff a hearing and in refusing to correct his record to show that he was physically permanently incapacitated for general active military service on the date of his discharge, December 5, 1945. The evidence most heavily relied on by plaintiff is the report of his entrance physical examination on August 28, 1950, on his recall to active duty in the Korean War, and his subsequent discharge from the Army and from the Reserves by reason of permanent physical disqualification for general military service. In our opinion, that medical report merely indicated that in August of 1950 plaintiff was permanently disqualified for general military service and that the disqualification resulted *158 from wounds received during World War II. Neither the report nor the Army’s subsequent action in discharging plaintiff established that on December 5, 1945, plaintiff was physically permanently incapacitated for active military service. Furthermore, the report of the Medical Board and the Retiring Board found plaintiff in 1948 to be fully qualified for general active duty service.
On the basis of the record before us, on which record both parties are content to rely, we cannot find that the Correction Board acted arbitrarily in denying plaintiff a hearing and in denying his application for a correction of his military records. At best, that record shows that in 1950 plaintiff was physically permanently disqualified for active military service and such a showing does not establish the essential fact that at the time of his separation in 1945 plaintiff was physically permanently disqualified for active duty. Accordingly, plaintiff’s motion for summary judgment is overruled and defendant’s motion for summary judgment is granted. The petition will be dismissed.
It is so ordered.
MaddeN, Judge; Whitaker, Judge; and JoNes, Chief Judge, concur.
Laramore, Judge, concurs in the result.